UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| Y-TEX CORPORATION,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>SCHENKER, INC.,<br><br>　　　　　Defendant. | No. C10-1264 RSL<br><br>ORDER DENYING THIRD-PARTY<br>DEFENDANTS' MOTION TO DISMISS<br>FOR IMPROPER VENUE |

## I.　INTRODUCTION

This matter comes before the Court on third-party defendants Hapag-Lloyd (America) Inc.'s and Hapag-Lloyd Aktiengesellschaft's (collectively "Hapag") motion to dismiss the third-party complaint of third-party plaintiff Schenker, Inc. ("Schenker") pursuant to Fed. R. Civ. P. 12(b)(3).[1]  Dkt. #29.  Hapag argues that dismissal for lack of venue is proper because (1) maritime law mandates enforcement of the forum selection clause in the bills of lading, (2) the forum selection clause applies to Schenker's claims against all the named third-party defendants, (3) the forum selection clauses in the bills of lading are mandatory and enforceable, and (4) Schenker cannot overcome its burden of proving that enforcement of the forum

---

[1] The Court DENIES Schenker's motion to file sur-reply. Dkt. #45. Hapag did not raise new arguments in its reply brief. Rather, Hapag responded to arguments made by Schenker in its response. Additionally, Schenker merely repeats arguments and re-hashes previously provided evidence in its sur-reply.

ORDER DENYING THIRD-PARTY DEFENDANTS'
MOTION TO DISMISS FOR IMPROPER VENUE - 1

selection clause is unreasonable.  Id.  Schenker argues that enforcement of the forum selection clause is unreasonable because substantive German law will reduce Hapag's liability below the guarantees of the Carriage of Goods by Sea Act ("COGSA").[2] Dkt. #32.  Having considered the memoranda, declarations, exhibits, oral argument, and the record herein, the Court DENIES Hapag's motion.

## II. BACKGROUND[3]

In July 2008, plaintiff was contacted by customers in Brazil and Argentina about placing orders for cattle ear tags.  Dkt. #37 (Largent Decl.) ¶2.  Plaintiff contacted Schenker to arrange for carriage of the goods from plaintiff's warehouse in Wyoming to ports in Brazil and Argentina.  Id.  Schenker alleges that it entered into an agreement with Hapag-Lloyd America "to forward to or contract with other entities, facilitate, coordinate, and/or arrange for the carriage of Y-Tex's cargo from Cody, Wyoming by truck, rail, and ship to ports in Brazil and Argentina, respectively."  Dkt. #18 (Third-Party Compl.) ¶16.[4]  Schenker alleges that Hapag and/or their agents, subcontractors, and/or representatives picked up the shipments in Wyoming, and that it stayed in the care of Hapag (or its agents, subcontractors or representatives) until the shipments were delivered in Brazil and Argentina.  Id. ¶¶18-21.

Prior to the goods leaving Wyoming, plaintiff ensured that the two shipments would not be confused by separating the shipments physically, weighing the cargo, preparing detailed packing lists, sealing each container with a seal number, and issuing a truckers bill of lading

---

[2] Hapag states that plaintiff Y-Tex Corporation "has no standing to oppose Hapag-Lloyd's motion to dismiss." Dkt. #43 at 2, n.1. Hapag has not cited, and the Court is unaware of, any Ninth Circuit authority prohibiting an original plaintiff from responding to a third-party defendant's motion. While plaintiff makes similar arguments to Schenker, the factual record provided by plaintiff is much more complete and helpful to the Court's understanding of the relevant facts. Accordingly, the Court has considered plaintiff's opposition and factual record.

[3] The Court notes that discovery is ongoing, and the Court has summarized the facts as presented by the parties at this early stage of the case.

[4] One week after Hapag filed its motion to dismiss, Schenker filed a First Amended Third Party Complaint. Dkt. #31. Schenker makes the same relevant allegations regarding Hapag in the amended complaint. See id. ¶¶17-18, 23-25

ORDER DENYING THIRD-PARTY DEFENDANTS'
MOTION TO DISMISS FOR IMPROPER VENUE - 2

with the specific information for each cargo. Dkt. #38 (Bennett Decl.) ¶¶4-7. Container number TGHU 4056962, which was the Brazil-bound shipment, was affixed with seal YTC1 on the container's door. Id. ¶8. Container number TGHU 4056962 contained 22 pallets and weighed 8,611.48 kilograms. Id. ¶9. Container CSQU 4421354, which was the Argentina-bound shipment, was affixed with seal YTC2 on the container's door. Id. ¶8. Container CSQU 4421354 contained 16 pallets and weighed 6,744.92 kilograms. Id. ¶10. All of this information was entered into the respective truckers' bills of lading for each shipment. Id. ¶¶6-10, Exs. 5 & 6.

Hapag issued bills of lading for loading the cargo onto the vessels. The bill of lading identifying container number TGHU 4056962 stated that it was bound for Argentina, identified seal YTC2, and stated that it contained 16 skids and weighed 6,744.92 kilograms. Dkt. #36-1 (Nicoll Decl.), Ex. 3. The bill of lading identifying container number CSQU 4421354 stated that it was bound for Brazil, identified seal YTC1, and stated that it contained 22 skids and weighed 8,611.48 kilograms. Id., Ex. 4. Plaintiff alleges that the containers were discharged to the wrong ports. That is, container number TGHU 4056962, which was sealed with YTC1, was discharged in Argentina, when it should have been discharged in Brazil. Dkt. #37 (Largent Decl.) ¶10. Container number CSQU 4421354, which was sealed with YTC2, was discharged in Brazil, when it should have been discharged in Argentina. Id.

Plaintiff sued Schenker, alleging claims for false bills of lading, geographic deviation, breach of fiduciary duty, and breach of contract of carriage. Dkt. #1. Schenker filed a third-party complaint against Hapag-Lloyd Aktiengesellschaft, Hapag-Lloyd (America) Inc., and the M/V Westfalia Express, alleging causes of action for "COGSA/Hague Visby," breach of contract, and indemnity/contribution. Dkt. #18.

## III. DISCUSSION

A motion to dismiss pursuant to a forum selection clause is treated as a motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3). Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th Cir. 1996). On a 12(b)(3) motion, the Court need not accept the pleadings as true, and may consider facts outside the pleadings. Id.

ORDER DENYING THIRD-PARTY DEFENDANTS'
MOTION TO DISMISS FOR IMPROPER VENUE - 3

In admiralty cases, forum selection clauses are presumptively valid and should be enforced unless enforcement is shown by the resisting party to be "unreasonable" under the circumstances. Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972). Enforcement is "unreasonable" where it would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or judicial decision. Id. at 15. To determine whether a clause violates public policy the Court focuses on whether "the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies." See Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer, 515 U.S. 528, 540 (1995) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637 n.19 (1985)).[5] The relevant question is "whether the substantive law to be applied will reduce the carrier's obligations to the cargo owner below what COGSA guarantees." Id. at 539. The party resisting enforcement of the forum selection clause bears a heavy burden of proof. Fireman's Fund, 131 F.3d at 1338.

Here, Schenker argues that enforcement of the forum selection clause would lessen the statutory remedies available under COGSA because German law does not recognize the doctrine of deviation or doctrine of false bills of lading. The Court must determine whether COGSA applies and whether the substantive law to be applied will reduce the carrier's obligations to the cargo owner below what COGSA guarantees.

**A.  Application of COGSA**

COGSA "applies to a carrier engaged in the carriage of goods to or from any port in the United States." 46 U.S.C. § 30702. Hapag does not dispute that COGSA applies where the vessels left Houston, Texas for ports in Argentina and Brazil. Accordingly, the Court finds that COGSA applies.

---

[5]Although Sky Reefer dealt with an arbitration clause, the Ninth Circuit has held that the Sky Reefer holding applies equally to forum selection clauses. Fireman's Fund Ins. Co. v. M.V. DSR Atlantic, 131 F.3d 1336, 1339 (9th Cir. 1997).

ORDER DENYING THIRD-PARTY DEFENDANTS'
MOTION TO DISMISS FOR IMPROPER VENUE - 4

## B. Comparison of COGSA guarantees and German law

COGSA was enacted to remedy specific abuses by carriers who inserted clauses in bills of lading to exempt themselves from liability for damage to goods entrusted to their care. Sky Reefer, 515 U.S. at 534-35. COGSA imposed substantive obligations and particular procedures to correct those abuses. Id. at 535. In Sky Reefer, the Supreme Court analyzed COGSA and found that it did not prevent parties from agreeing to enforce the obligations in a particular forum. Id. The Court found that the central guarantee is that "the terms of a bill of lading may not relieve the carrier of the obligations or diminish the legal duties specified by [COGSA]." Id. at 539. The Court concluded that the relevant question was "whether the substantive law to be applied will reduce the carrier's obligations to the cargo owner below what COGSA guarantees." Id. COGSA "guarantees" that a carrier will not insert in a bill of lading "a provision avoiding its liability for loss or damage arising from negligence or fault in loading, stowage, custody, care, or proper delivery." 46 U.S.C. § 30704.[6] COGSA also "guarantees" that the carrier will issue a bill of lading that includes a statement of (1) "the marks necessary to identify the goods; (2) the number of packages, or the quantity or weight, and whether it is carrier's or shipper's weight; and (3) the apparent condition of the goods." 46 U.S.C. § 30703.

### 1. Deviation and False Bills of Lading under COGSA

At common law, a geographic deviation from a scheduled voyage stripped a carrier of many of its defenses to liability and made the carrier the effective insurer of the goods that it was carrying. Vision Air Flight Serv., Inc. v. M/V Nat'l Pride, 155 F.3d 1165, 1170 (9th Cir.

---

[6]Under the prior version, COGSA required the carrier to "properly and carefully load, handle, stow, carry, keep, care for, and discharge the goods carried." 46 U.S.C. §1303(2) (1981), amended by 46 U.S.C. 30701 et seq. (2006). The notes to section 30701 state: "This chapter codifies the Act of February 13, 1893 (ch. 105, 27 Stat. 445) (commonly known as the Harter Act). Changes are made to simplify, clarify, and modernize the language and style, but the intent is that these changes should not result in changes in substance." 46 U.S.C. 30701, Prior law and revision. Given that changes to the law were not intended to change the substance, the Court finds that section 30704 was intended to encompass the prior section 1303(2)'s requirement that the carrier properly and carefully load, stow, carry, keep, care for, and discharge the goods carried.

1998). "The basis for the doctrine was the understanding between shipper and carrier that the carrier would not stray from the customary course of the voyage it contracted to undertake." Id. at 1171. "When the carrier breached the contract of carriage by deviating from the agreed upon voyage, it was regarded to have exposed the cargo to such additional and unanticipated risk as to constitute a fundamental breach of the contract of carriage." Id. "Having breached the contract in such a fundamental manner, the carrier was not permitted to rely on exculpatory provisions in the bill of lading, such as limitations on liability." Id. The underlying rationale of the deviation doctrine "applied readily to other situations whereby the carrier exposed the cargo to unreasonable and unjustifiable risks not contemplated by the parties." Id. Accordingly, the doctrine was expanded to encompass certain breaches of the contract of carriage serious enough to merit the harsh consequences the deviation doctrine imposes. Id.

The doctrine of deviation survived the enactment of COGSA, but courts agree that the doctrine should be sharply limited. Id. at 1173. Deviation is defined as the "voluntary departure without necessity, or any reasonable cause, from the regular and usual course of the voyage." Id. at 1175 (internal quotations omitted). In order for a deviation to be unreasonable, the carrier must have acted with conduct that is more culpable than gross negligence or recklessness. Id. In applying the doctrine of deviation, courts have consistently focused on "the extent to which a departure from the contract of carriage exposes the cargo to 'unanticipated and additional risks.'" Id.

The Ninth Circuit has not addressed whether the doctrine of deviation extends to a carrier that issues a false bill of lading that erroneously states that goods have been received on board when they have not been so loaded. The Court is persuaded by the reasoning of the Second Circuit Court of Appeals in Berisford Metals Corp. . S/S Salvador, 779 F.2d 841 (2d Cir. 1985). The central issue in Berisford was whether a carrier that issued an erroneous bill of lading could limit its liability pursuant to an agreement binding the parties to certain COGSA terms. Id. at 845. The court emphasized the necessity for maintaining the integrity of and confidence in bills of lading:

ORDER DENYING THIRD-PARTY DEFENDANTS'
MOTION TO DISMISS FOR IMPROPER VENUE - 6

> [A] bill of lading is a fundamental and vital pillar of international trade and commerce, indispensable to the conduct and financing of business involving the sale and transportation of goods between parties located at a distance from one another. It constitutes an acknowledgment by a carrier that it has received the described goods for shipment. It is also a contract of carriage. As a document of title it controls the possession of the goods themselves.

Id. The court recognized that "a fundamental misstatement in a bill of lading need not be fraudulent or intentional for liability to ensue." Id. at 846 (citing Elgie & Co. v. S.S. S.A. Nederburg, 599 F.2d 1177, 1180 (2d Cir. 1979)). The court noted that whether "one lines the carrier's issuance of a false bill of lading with respect to its loading of cargo to a deviation, a breach of warranty, or a representation which it must be estopped to deny, its adverse impact on trade and on reliance on bills as an essential method of facilitating trade is serious." Id. (internal quotations omitted). The court found that when a carrier makes a representation in a bill of lading with respect to its own conduct it is properly held to a higher standard since it is reasonably expected to be aware of *its own actions*, including whether or not it has loaded cargo." Id. at 847 (emphasis in original).

The carrier in Berisford received 100 bundles of tin ingots from the shipper, but issued a false bill of lading warranting that it had loaded 100 bundles when it had only loaded 30. Id. at 847-48. The Court found that the carrier had fundamentally breached the contract of carriage, and was therefore precluded from invoking COGSA's limitation on liability as to the 70 unloaded bundles. Id. at 848 ("carrier owed a duty to verify the weight of the containers at shipside before they were placed aboard its ship and before it stated that they contained 100 bundles of tin ingots weighing the equivalent of 50,647 kilos or 111,656 lbs., which would have been 78,885 lbs. in excess of the weight of the containers it actually loaded."). Id. The court held that "when a carrier misrepresents its own conduct in loading goods aboard ship it is responsible for the misrepresentation and may not invoke contract provisions incorporating COGSA's limitations on liability." Id. at 849.

ORDER DENYING THIRD-PARTY DEFENDANTS'
MOTION TO DISMISS FOR IMPROPER VENUE - 7

The Court adopts the reasoning of the Second Circuit and finds that issuing a false bill of lading may be considered an unreasonable deviation. Courts have limited the false bill of lading exception "'to misrepresentations concerning the physical condition or location of the goods at the time the bill of lading was issued.'" St. Paul Travelers Ins. Co. v. M/V Madame Butterfly, 700 F. Supp. 2d 496, 506 (S.D.N.Y. 2010). Courts have also "required a nexus between the misrepresentation and the damage to the goods before finding that the COGSA package limitation does not apply." Id.

Hapag argues that the "bills of lading clearly state which container will be taken to which discharge port. Neither Y-Tex nor Schenker contends that . . . Hapag-Lloyd failed to deliver the containers at the discharge ports stated on the bills of lading." Dkt. #43 at 9.

Here, there are two bills of lading that Hapag issued to Schenker. The first purports to be the bill of lading for the Argentina shipment, which identifies container number TGHU 405696, seal YTC2, 16 skids, and 6,744.92 kilograms of weight. Dkt. #36-1 (Nicoll Decl.), Ex. 3. The second purports to be the bill of lading for the Brazil shipment, which identifies container number CSQU 4421354, seal YTC1, 22 skids, and 8,611.48 kilograms of weight. Id., Ex. 4. However, container number TGHU 405696, which should have been delivered to Brazil (not Argentina), was sealed with YTC1 (not YTC2), contained 22 skids (not 16), and weighed 8,611.48 kilograms (not 6,744.92). Dkt. #37 (Largent Decl.) ¶13; dkt. #38 (Bennett Decl.) ¶9. Likewise, container number CSQU 4421354, which should have been delivered to Argentina (not Brazil), was sealed with YTC2 (not YTC1), contained 16 skids (not 22), and weighed 6,744.92 kilograms (not 8,611.48). Dkt. #37 (Largent Decl.) ¶13; dkt. #38 (Bennett Decl.) ¶10. Presented with these facts, Schenker has made a compelling argument that Hapag was responsible for "verifying the contents before loading the containers and issuing a clean on board bill of lading" (Berisford, 779 F.2d at 848), or, at a minimum, for checking the seal which was visible from the outside of the containers to verify the weight. The alleged resulting damage was discharge of the containers at the wrong ports.

ORDER DENYING THIRD-PARTY DEFENDANTS'
MOTION TO DISMISS FOR IMPROPER VENUE - 8

Accordingly, the Court finds that Schenker would likely be able to demonstrate an unreasonable deviation. See Berisford, 779 F.2d at 848 ("when a carrier misrepresents its own conduct in loading goods aboard ship it is responsible for the misrepresentation").

### 2. **Bill of Lading and German Law**

The bill of lading has several relevant provisions:

> **5. Carrier's Responsibility**
> (1) Port to Port Shipment
>    (a) When loss or damage has occurred between the time of loading of the Goods by the Carrier at the Port of Loading and the time of discharge by the Carrier at the Port of Discharge, the responsibility of the Carrier shall be determined in accordance with German law making the Hague-Visby rules compulsorily applicable to the Bill of Lading. . . .
>    (b) Howsoever, the Carrier shall be under no liability whatsoever for loss of or damage to the Goods occurring, if such loss or damage arises prior to loading on or subsequent to the discharge from the vessel. Notwithstanding the above, in the event that the applicable compulsory law provides the contrary, the Carrier shall have the benefit of every right, defence, limitation and liberty in the Hague-Visby Rules or the Hague Rules, notwithstanding that the loss or damage did not occur after loading on or after discharge from the vessel. In the event that the Bill of Lading covers a shipment to or from the USA, however, COGSA shall be applicable before the Goods are loaded on or after they are discharged from the vessel. . . .
>
> **7. Sundry Liability Provisions**
> (1) Hague Rules/Hague-Visby Rules
>    In the event that suit is brought in a court other than the court as provided for in Clause 25 and such court contrary to clause 25 accepts jurisdiction, then the Hague-Visby Rules are compulsorily applicable, if this Bill of Lading has been issued in a country where the Hague-Visby Rules are compulsorily applicable and the Carier's liability shall not exceed 2 SDRs per kilo of gross weight of the goods lost or damages; . . .
> (2) COGSA
>    Notwithstanding any of the foregoing to the contrary, in the event that suit is brought in a court in the USA and such court, contrary to Clause 25, accepts jurisdiction, then COGSA shall

ORDER DENYING THIRD-PARTY DEFENDANTS'
MOTION TO DISMISS FOR IMPROPER VENUE - 9

> be compulsorily applicable to this contract of carriage if this Bill
> of lading covers a shipment to or from the USA. The provisions
> set forth in COGSA shall also govern before the Goods loaded
> on or after they are discharged from the vessel. The Carrier's
> maximum liability in respect to the Goods shall not exceed USD
> 500 per package . . . .
>
> **25. Law and Jurisdiction**
> Except as otherwise provided specifically herein any claim or
> dispute arising under this Bill of Lading shall be governed by the
> law of the Federal Republic of Germany and determined in the
> Hamburg courts to the exclusion of the jurisdiction of the courts of
> any other place. . . .

Dkt. #30-1 (Williams Decl.), Ex. A.

       Hapag argues that German courts regularly apply COGSA and Hapag will not oppose its application to Schenker's claims in Germany. Dkt. #43 at 10-11; Dkt. #44 (Kienzle Decl.) ¶5. During oral argument, Hapag represented that it would accept the application of COGSA and general maritime jurisprudence to the extent that it applies. However, section 25 specifically requires the application of "the law of the Federal Republic of Germany," unless a court in the United States accepts jurisdiction under section (7)(2). Although section 5(2) provides that COGSA will apply to goods that are loaded on or after they are discharged from the vessel where a bill of lading covers a shipment to or from the United States, the bill of lading does not provide for the application of general maritime jurisprudence with respect to the deviation and false bill of lading doctrines. Schenker has provided evidence that German law will likely be applied by the Hamburg courts, and Hapag does not dispute this evidence. See Dkt. #33 (Wanckel Decl.) ¶8. German law establishes a limited liability regime for carriers for the total loss of the cargo. Id. ¶9. The applicable German law does not recognize the doctrine of deviation or doctrine of false bills of lading. Id. ¶¶10-12. Mr. Wanckel, an experienced attorney specializing in maritime law in Germany, states:

> Under German law, to overcome the right to limited liability for a
> carrier, such as Hapag-Lloyd AG, for the total loss of cargo carried
> by sea, a claimant bears the heavy burden of proving the personal

ORDER DENYING THIRD-PARTY DEFENDANTS'
MOTION TO DISMISS FOR IMPROPER VENUE - 10

> negligence of the carrier. To establish personal negligence of the
> carrier, the claimant must demonstrate that the carrier acted
> recklessly or with deliberate disregard for known risks at the
> highest level of the carrier's organization structure. The intentional
> or reckless act must have been committed by the Board of Directors
> or the organization as a whole must have lacked sufficient controls
> to prevent the damage. Merely proving the gross negligence,
> recklessness, or intentional conduct of an employee of the carrier
> does not defeat the carrier's right to limit its liability.

Id. ¶13. Hapag does not dispute that Mr. Wanckel's representation of German law is accurate. Instead, Hapag argues that "Schenker's argument that it will bear a heavier burden to recover damages beyond the liability limitation . . . is absurd" because to prove deviation, "the shipper must demonstrate that the carrier's exposure of the cargo to an unreasonable and unbargained for risk was 'intentional.'" Dkt. #43 at 7. However, Hapag has not produced any evidence contesting that proving "personal negligence of the carrier" requires proving that Hapag's "Board of Directors intentionally caused the damage to the subject cargo or acted recklessly and with knowledge that the damage would probably result." Dkt. #33 (Wanckel Decl.) ¶14. In Vision Air, 155 F.3d at 1175, the court concluded that "a carrier's intentional destruction of the very goods it contracts to transports constitutes unreasonable deviation." However, such intentional conduct is not required to be the conduct of the carrier's board of directors, which is a much heavier burden of proof.

Hapag argues that "application of the doctrine of deviation will not affect whether Hapag-Lloyd is liable to Schenker. It would only affect the quantum of Schenker's recovery." Dkt. # 43 at 5-7. The Court disagrees.

As previously noted, COGSA "guarantees" that a carrier will not insert in a bill of lading "a provision avoiding its liability for loss or damage arising from negligence or fault in loading, stowage, custody, care, or proper delivery." 46 U.S.C. § 30704. COGSA also "guarantees" that the carrier will issue a bill of lading that includes a statement of (1) "the marks necessary to identify the goods; (2) the number of packages, or the quantity or weight, and whether it is carrier's or shipper's weight; and (3) the apparent condition of the goods." 46

ORDER DENYING THIRD-PARTY DEFENDANTS'
MOTION TO DISMISS FOR IMPROPER VENUE - 11

U.S.C. § 30703. The false bill of lading doctrine does not require intentional conduct. Berisford, 779 F.2d at 846 ("fundamental misstatement in a bill of lading need not be fraudulent or intentional for liability to ensue"). If the Court forced Schenker to litigate in Germany pursuant to the forum selection clause, Hapag would likely be relieved of its COGSA obligation to "properly and carefully load, handle, stow, carry, keep, care for, and discharge the goods carried" (46 U.S.C. § 30701, note at section 3(2)) and to verify the contents of the containers "before loading the containers and issuing a clean on board bill of lading" (Berisford, 779 F.2d at 847).

Accordingly, the Court finds that the German substantive law that would be applied will reduce Hapag's obligations to Schenker below what COGSA guarantees.

## IV. CONCLUSION

For all the foregoing reasons, the Court DENIES Hapag's motion to dismiss.

DATED this 8th day of June, 2011.

*[signature]*
Robert S. Lasnik
United States District Judge

ORDER DENYING THIRD-PARTY DEFENDANTS'
MOTION TO DISMISS FOR IMPROPER VENUE - 12